EASTERN BRIDGE AND STRUCTURAL COMPANY *vs.* WORCESTER AUDITORIUM COMPANY & another.

Worcester.   December 10, 1913. — January 9, 1914.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & DE COURCY, JJ.

*Equity Pleading and Practice,* Taking bill *pro confesso,* Contempt of interlocutory order, Master, Decree, Judicial sale.  *Equity Jurisdiction,* To reach and apply equitable assets.  *Master in Chancery.*

In a suit in equity to reach and apply to the payment of the plaintiff's claim the interest of the principal defendant in certain real estate, where the defendants filed no answers and, without a decree taking the bill as confessed, the case was referred to a master, upon whose report an order of court was made directing the master to sell the real estate in question for a certain price at private sale, and, when the master made a further report that this price could not be obtained, another order of court was made authorizing the master to sell the property at public auction with full directions for the protection and settlement of the rights of the parties, this court, in dealing with the questions presented to them upon a report of the case by the judge who heard it, treated the bill as confessed.

A valuable option given by the terms of a lease of real estate to the lessee to purchase the real estate at a fixed price is a property right which a creditor of the lessee may reach and apply to the payment of his claim by a suit in equity under R. L. c. 159, § 3, cl. 7.

In a suit in equity under R. L. c. 159, § 3, cl. 7, to reach and apply to the payment of the debt of the principal defendant to the plaintiff an option to purchase certain real estate of the other defendant, where under an interlocutory decree a master has sold at auction the real estate in question and the defendant owner of the real estate has refused to give a deed of it to the purchaser in accordance with the order contained in the interlocutory decree, the judge who hears the case, instead of issuing process for contempt against that defendant, as he may do in his discretion, may make a final decree under St. 1910, c. 376, which will vest the title to the real estate in the purchaser, and which, when a certified copy thereof has been recorded or registered under the provisions of §§ 2, 3, of that statute, will have the effect of "a duly executed deed."

Under a practice apparently never before questioned in this Commonwealth and expressly recognized in R. L. c. 165, § 54, the Supreme Judicial Court or the Superior Court may refer a suit in equity to a master who is not a master in chancery appointed by the Governor under § 52 of that chapter.

Where in a suit in equity an interlocutory decree is made for a sale of real estate by a master, such decree ordinarily, as in the present case, is not intended to be the final decree of sale, a confirmation of the sale by the court being contemplated after all parties interested, including the proposed purchaser, have been given an opportunity to be heard.

BILL IN EQUITY, filed in the Superior Court on June 11, 1912, by the Eastern Bridge and Structural Company, a corporation, as a creditor of the defendant Worcester Auditorium Company, a corporation, in behalf of itself and such other creditors as might join, under R. L. c. 159, § 3, cl. 7, to reach and apply to the payment of the plaintiff's claim a lease of a building called the Worcester Auditorium, constituting almost the entire assets of the defendant corporation and standing on land of the defendant Shannon, the lessor, the lease giving to the defendant corporation the right to purchase the property for a price named.

The defendants filed no answers. The proceedings, which are described in the opinion, are there referred to as unusual and anomalous. The case was referred to William J. Taft, Esquire, as master, who made the reports referred to but not shown by the record. The second master appointed, who is referred to in the opinion as having seemed to perform the functions of a revising magistrate, was Charles F. Baker, Esquire.

The Casino Company, a corporation, was the purchaser of the property sold at auction by the first master under an interlocutory decree. This corporation intervened by petition and was made a party to the suit by an order of court on August 25, 1913.

The case was heard by *Ratigan*, J., upon a motion filed by the Casino Company and William J. Taft, master, to have the report of Charles F. Baker, special master, confirmed; a motion of the Worcester Auditorium Company to vacate the sale made by William J. Taft as master under a decree of the Superior Court; and a petition of William J. Taft, master, to have Maurice W. Shannon adjudged in contempt of court for refusing to sign a deed in accordance with the terms of a decree of the Superior Court.

The judge ordered that the master's report of Charles F. Baker be confirmed. He refused to give certain rulings requested by the defendants, and, with the consent of all the parties, reported the case for determination by this court of the questions of law raised.

*C. C. Barton*, for the defendant Shannon.

*F. A. Wyman*, for the defendant the Worcester Auditorium Company.

*C. M. Thayer*, for the Casino Company.

BRALEY, J.   The defendants never have answered, and, before reference to the master to hear the parties and report his findings of fact, or after the coming in of his report and before directing him to sell the property of the defendant company, a decree taking the bill for confessed should have been entered.   But, while the proceedings appear to have been unusual and anomalous, the court could define the rights of the plaintiff, and under the master's report, which is referred to but is not shown by the record, direct him to sell the property at a price named, and upon his further report, which also does not appear, that the price could not be obtained, enter the decree authorizing him to sell at public auction, with full directions for the protection and settlement of the rights of the parties.   *Moody* v. *Gay,* 15 Gray, 457.   We shall treat the bill as confessed in our discussion of the questions presented by the report of the judge under which the case is before us.

The agreement of the lessor, the defendant Shannon, to sell the demised premises to the defendant corporation, the lessee and debtor of the plaintiff, at the price fixed in the lease is a right to property which the plaintiff under R. L. c. 159, § 3, cl. 7, can reach and apply in payment of its debt.   *McMahon* v. *Gray,* 150 Mass. 289, 291.   While the scope of the bill cannot be enlarged by specific prayers, yet relief coextensive with the allegations of the bill can be granted if any specific prayer is sufficient, or, if not, then under the general prayer.   *Fordyce* v. *Dillaway,* 212 Mass. 404.   The "right, title and interest of the defendant corporation," as stated in the first prayer, is the right under the contract of the debtor to a conveyance in fee.   It is no defense for either of the defendants to urge that the decree of sale was void.   The court had jurisdiction of the subject matter and of the parties, and, no appeal having been taken, it is conclusive until vacated by the trial court.   *William Rogers Manuf. Co.* v. *Rogers,* 38 Conn. 121. *Ashby* v. *Ashby,* 17 Dick. 618.   Nor would it avail the defendants, even if the decree had been erroneous or inadvertently entered. *Forrest* v. *Price,* 7 Dick. 16.   *People* v. *Bergen,* 53 N. Y. 404.   To this decree, moreover, the defendants gave their written assent by counsel whose authority to act apparently has never been questioned or repudiated.   The master having made the sale as directed, and for a price which satisfied the agreement in the lease, the defendant company complied with the decree requiring it to

execute the deed to the purchaser, prepared by the master, but Shannon, to whom we shall refer as the defendant, upon tender of the amount due to him, refused compliance, and thereupon the master made report of what had been done, and, as the sale could not be completed, he asked that process for contempt issue against the defendant.

It would have been more satisfactory if the court had proceeded under the St. of 1910, c. 376, by entering a final decree which, upon being duly attested and recorded in the land records, would have vested title in the Casino Company, the corporation which the purchaser had organized to take title, and thus have obviated any necessity of obtaining the defendant's signature and acknowledgment. But, if the usual process of contempt to enforce performance of this decree is open, and is expressly recognized as a remedy in St. 1910, c. 376, § 4, which can be invoked by the parties, no action has been taken by the trial court. *Hawley* v. *Bennett,* 4 Paige, 163. A master's duty is discharged when, having acted in so far as possible in conformity with the decree, he reports to the court and asks further directions. It is then for the court whose order or decree has been disobeyed to determine what further steps shall be taken to afford full relief, and to enforce obedience, and, until this has been done by an appropriate decree, there is nothing for this court to revise or affirm.

The motion of the defendant company to vacate the decree of sale upon the grounds, that the appointment of the master was void, that the price was inadequate, and that by reason of collusion among bidders the property was sold at an unfair price, having been filed, a second reference was made to another special master to determine these questions, together with "all questions of fact raised by the master's report of the refusal of the" defendant to sign the deed, "the petition for contempt, together with the answer thereto." To this report, which elaborately reviews the entire proceedings, no exceptions were taken, but at the hearing for confirmation and decree thirty-six requests for rulings were made by the defendants, all of which were refused. It is unnecessary to consider these requests except as they have been argued, and further reference to the question of contempt will be omitted for reasons previously stated.

The decree authorizing the sale of the land itself was as we

have said within the power of the court, and the form of the deed prescribed did not call for a covenant of strict warranty from the defendant. It only required him to covenant that the land was free from all incumbrances suffered by him, except the "leasehold rights," and the plaintiff, having been subrogated to the rights of the debtor and lessee, was entitled to a conveyance passing the defendant's title and interest.

Nor do we perceive any ground for the contention of the defendants, that under his appointment the master had no authority to make the sale. The decree expressly ordered him to sell, and he is not shown by the second master's report to have exceeded his powers or to have acted otherwise than for the benefit of all parties. *Pratt* v. *Lamson,* 6 Allen, 457. *Heyer* v. *Deaves,* 2 Johns. Ch. 154. *Williamson* v. *Berry,* 8 How. 495.

The argument, however, is pressed that by the appointment of a special master the court exceeded its jurisdiction, because only a master in chancery commissioned by the Governor for a term of years under the provisions of the R. L. c. 165, § 52, could lawfully act. The origin and early history of the office of master in chancery is learnedly and abundantly stated and examined in 1 Spence, Eq. Jur. c. 5. Originally masters were appointed by the King and acted as assistants to the chancellor. Our St. of 1826, c. 109, codified in Rev. Sts. c. 88, §§ 31–35, and appearing in subsequent revisions is the first provision for the appointment by the Governor of masters in chancery. Gen. Sts. c. 121, § 41. Pub. Sts. c. 159, § 46. R. L. c. 165, § 52. But the modern American practice, if there has been no previous reference to a standing master, is, to refer the cause in the discretion of the court to a special master, usually denominated as master in the decree. 2 Dan. Ch. Pl. & Pr. (6 Am. ed.) 1168. And this practice does not seem ever to have been doubted in this jurisdiction. *Copeland* v. *Crane,* 9 Pick. 73, 75. *Atlanta Mills* v. *Mason,* 120 Mass. 244, 246. *Parker* v. *Nickerson,* 137 Mass. 487, 490, 491. St. 1857, c. 105, § 1. It is expressly recognized in St. of 1883, c. 216, amended by St. 1886, c. 51, and now R. L. c. 165, § 54, which confers upon the Supreme Judicial Court and the Superior Court the power to award reasonable compensation to "masters in chancery and special masters, for duties performed under the direction of said courts." The judge rightly declined to rule that the reference

was void, and, it being plain from the second master's findings that no error was shown in the proceedings of the first master or any sufficient ground to set the sale aside, the judge's order confirming the report of the second master should be affirmed.

It follows that the motion to vacate the sale also should be denied. A judicial sale, however, generally is confirmed by the court, after all parties interested, including the proposed purchaser, have been given an opportunity to be heard. *Wagner v. Cohen,* 6 Gill, 97. *Ex parte Minor,* 11 Ves. 559. The decree of sale was not designed to be final, nor is it to be inferred from the terms of the decree that the court intended to depart from the usual procedure or to surrender its power of final supervision. But whatever the interpretation of the decree may be as to the defendant, the sale has not been completed and the master has made a report setting forth all his doings and asking for such further orders or decrees as the court may deem necessary. In view of the second master's report as to the manner in which the sale was conducted, no reason appears why the report of the first master under the decree of sale should not be confirmed. No final decree, however, has been entered. It is still within the sound discretion of the trial court to revise and vary the interlocutory decree or decrees in so far as may be advisable, and to proceed under St. of 1910, c. 376, thereby avoiding further delay in the settlement of a controversy which has drifted into an involved and vexatious litigation. *Park v. Johnson,* 7 Allen, 378. *Merrill v. Beckwith,* 168 Mass. 72. *White v. Gove,* 183 Mass. 333.

The result is that a decree is to be entered overruling the motion to vacate the sale, confirming the report of the first master relating to his proceedings in effecting the sale, and the report of the second master, who seems to have performed the functions of a revising magistrate.

*Ordered accordingly.*