SARAH L. SINCLAIR & another *vs.* MICHAEL H. HOLDEN.

MICHAEL H. HOLDEN *vs.* SARAH L. SINCLAIR & another.

Worcester.   September 26, 1927. — November 25, 1927.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Equity Jurisdiction,* Reformation of contract. *Contract,* Reformation. *Equity Pleading and Practice,* Master: exception to report, recommittal of report. *Evidence,* Extrinsic affecting writing.

The disposition of a motion to recommit a report to a master in a suit in equity is within the discretion of the court.

Exceptions to the report of a master in a suit in equity which depend in some measure on questions of fact must be overruled where the evidence is not reported and the findings are not inconsistent with each other.

In a suit in equity to reform a contract in writing by the plaintiff to sell and convey certain parcels of land to the defendant by "a good and sufficient warranty deed . . . together with a certificate of title showing the premises to be free and clear of all encumbrances," so that the contract would provide that the conveyance of one of the parcels would be by quitclaim deed and of others subject to rights of a power company, it appeared that the contract was clear and unequivocal. A master found on evidence which was not reported that previous to the making of the contract the defendant was informed that the title to the first parcel was uncertain and disputed, that no one could give a clear title to it, and that the plaintiff would convey it only by a quitclaim deed; and that the other parcels were to be conveyed subject to the rights of the power company; that such was the intent of the parties and that

the agreement in writing did not express the intent. The defendant by a cross suit sought specific performance of the contract. *Held,* that final decrees reforming the contract and denying specific performance were warranted.

BILL IN EQUITY, filed in the Superior Court on June 9, 1926, seeking reformation, by reason of a mutual mistake of the parties, of the contract in writing described in the opinion, or, in the alternative, its rescission and cancellation. Also, a

BILL IN EQUITY, filed in the same court on October 7, 1926, by the defendant in the first suit against the plaintiffs therein seeking specific performance of that contract.

The defendant in the first suit (hereinafter called the defendant) demurred to the bill. The demurrer was heard by *Brown,* J., and an interlocutory decree overruling it was entered by his order. The defendant appealed but did not argue such appeal on his brief in this court.

The two suits were referred to the same master. Material facts found by the master are stated in the opinion.

The defendant moved to recommit the report to the master for the finding of certain further facts and to strike out certain portions of the report alleged by the defendant to be "inadmissible," "argumentative," or ."a conclusion contrary to the law applicable thereto." He also filed objections to the report, which became exceptions under Equity Rule 26 (1926).

The master's report included no report of evidence. The record did not disclose any affidavit of facts supporting the motion to recommit the report, any findings of fact by the judge with relation thereto, or any request for rulings presented at the hearing of that motion.

The motion to recommit and the exceptions were heard by *Lummus,* J., and by his order an interlocutory decree was entered denying the motion to recommit the report to the master, overruling the defendant's exceptions to the master's report excepting in particulars not now material, amending the report in those particulars, and confirming the report as thus amended. Subsequently, final decrees were entered by order of *Broadhurst,* J., dimissing the second suit and granting the plaintiffs in the first suit the reformation

of the contract therein sought.    Holden appealed from both decrees.

*H. A. Murphy*, for Holden.

*L. E. Stockwell*, for Sinclair and another.

BRALEY, J.   The parties, on March 21, 1922, entered into a contract under seal whereby the plaintiffs Sinclair agreed to sell and the defendant Holden to purchase certain tracts of land with the buildings thereon and the rights of way thereto appurtenant.   The defendant entered into possession. By the terms of the contract he was to pay the purchase price of $20,000 on or before May 1, 1927, in the following manner: $100 on May 1, 1922; $100 on the first day of each succeeding month until May 1, 1927; and the balance of $14,000 on May 1, 1927, with the privilege of anticipating the payments. Upon completion of the payments, the vendors agreed to convey the title to Holden by "a good and sufficient warranty deed . . . together with a certificate of title showing the premises to be free and clear of all encumbrances."   The purchaser paid $3,500 of the purchase price and the master, to whom the cases were referred, finds that Holden notified the plaintiffs in writing on August 24, 1923, that he intended to pay the full amount remaining unpaid.   Holden with his counsel met counsel for the Sinclairs at the registry of deeds April 1, 1926, and tendered the amount remaining due and requested a warranty deed of the three parcels described in the contract with a certificate of title that they were free from all encumbrances.   The vendors offered a warranty deed of the first two parcels which contained a statement that "said premises are conveyed subject to the rights of the New England Power Company" and declared their "inability to furnish a certificate" of title.   It is found that if the contract was valid the purchaser had fully performed all precedent conditions and was then entitled to a warranty deed of the premises as therein described.

The contract on its face was a valid enforceable instrument with the terms of which the vendors were bound to comply upon tender of performance by the purchaser.   *Seretto* v. *Schell*, 247 Mass. 173.

The purchaser having refused to accept a conveyance in

the form proposed, the vendors, on June 9, 1926, brought the first suit for a reformation of the contract on the ground that by mistake the agreement did not contain the understanding and intention of the parties that a certain portion of the premises — namely, the first two parcels — should not be conveyed with a free and clear title. The defendant Holden demurred to the bill, but the general demurrer was overruled rightly. *J. P. Eustis Manuf. Co.* v. *Sacco Brick Co.* 198 Mass. 212. *Raynes* v. *Sharp,* 238 Mass. 20.

On October 7, 1926, Holden brought a bill against the vendors asking for specific performance of the contract in accordance with its terms.

Prior to the date of the contract the vendors had granted to the New England Power Company the "perpetual right and easement to construct, reconstruct, replace, repair, maintain, operate and patrol, for the transmission of high and low voltage electric current and for telephone use, a single and double line of towers or poles or both, which lines may be erected at the same or different times, with wires, cables and ground wires strung upon and from the same, and all necessary foundations, anchors, guys, braces, insulators, hardware, fittings, equipment and appurtenances over, across and upon our land . . . . Together with the right to trim and cut . . . trees and underbrush along said lines as the grantee may desire" without further payment. The lands subjected to the easement are the first and second tracts or parcels named in the contract and referred to in the report as the Homestead Lot.

The master having found on unreported evidence that the plaintiff Holden was informed that the bounds and title of the Swamp Lot were uncertain and disputed; that no one had been able to get a clear title to it; that it was considered to be of little value anyway; that Holden was, in substance, informed that the two parcels first described would be conveyed free from encumbrances except for the rights of the New England Power Company; that only a quitclaim deed would be given of the Swamp Lot; and that both parties so understood the verbal agreement, these findings must stand as well as his ultimate conclusion that "the written agree-

ment does not express the actual agreement and understanding to which the parties had arrived and which I find to be that the Homestead Lot was to be conveyed subject to the New England Power Company rights, and that only a quitclaim deed to the Swamp Lot was to be given." *Peirce* v. *Moison*, 256 Mass. 528, 530. The report negatives the allegation of laches and bad faith on the part of the plaintiffs in Holden's answer. *Sawyer* v. *Cook*, 188 Mass. 163, 168.

The denial of the defendant's motions to recommit the report shows no error. *American Stay Co.* v. *Delaney*, 211 Mass. 229. The interlocutory decree overruling the defendant's exceptions to the master's report and confirming the report, after the trial judge had sustained one of the exceptions on a point which thereafter became immaterial to the issue of reformation, was properly entered. The exceptions depended in one form or another on questions of fact on which the master's conclusions are not reviewable, and there was no violation of the parol evidence rule. *Cardinal* v. *Hadley*, 158 Mass. 352. *Tuttle* v. *Corey*, 245 Mass. 196. *Porter* v. *Spring*, 250 Mass. 83. The result is that all the interlocutory decrees as shown by the record are affirmed, and the final decree dismissing the bill in the second case is also affirmed. *Cashman* v. *Bean*, 226 Mass. 198. The plaintiffs in the first case are entitled to the relief prayed for; and the final decree "That the contract referred to in the plaintiff's bill be and the same hereby is reformed in the following manner, to wit: By striking out of said contract the following portion where the same appears in the eleventh paragraph thereof ' . . . a good and sufficient warranty deed of the aforesaid premises, together with a certificate of title showing the premises to be free and clear of all encumbrances' and substituting therefor the following: 'A good and sufficient warranty deed of the first tract referred to as the Homestead lot and of the second tract, both free and clear of all encumbrances except rights of the New England Power Company, together with a certificate of title showing said tracts to be free and clear of all encumbrances except the said rights of the New England Power Company; and a quitclaim deed of the third tract known as the Swamp Lot . . . . That the defendant

Michael H. Holden on or before the first day of May, 1927, pay to the plaintiff Sarah L. Sinclair the sum of Fifteen thousand three hundred ($15300.00) Dollars conditional upon the plaintiffs' tendering to him at the same time a warranty deed of the first two tracts, free and clear of all encumbrances except rights of the New England Power Company and a quitclaim deed of the Swamp lot, together with a certificate of title showing the first two tracts to be free and clear of all encumbrances except the said rights of the New England Power Company " is affirmed with costs.

*Ordered accordingly.*