*Southern District*

# No. 126

# CARRIE SEAMAN
## v.
# ELLEN SILVER

Argued: January 21, 1976. Decided: July 15, 1976.

Case tried to *Welsh, J.,* in the Second District Court of Barnstable County. No. 20212.

Present: Lee, P.J.; Tamkin, Hurd, J.J.

**Hurd, J.** This is an action of contract in which the plaintiff, in her capacity of surviving tenant by theentirety and not as person representative of the estate of her deceased husband, seeks to rcover rent for a three month period and an additional sum for certain damage to certain premises leased to the defendant under an indenture of lease executed by the plaintiff's late husband. The plaintiff did not join in the execution of the lease.

The court found for the defendant.

*There was evidence that* the plaintiff and her late husband were the owners as tenants by the entirety of certain premises in Provincetown. On March 11,

1973 the plaintiff's husband leased the premises to the defendant for a term of one year commencing March 14, 1973. The plaintiff did not join in the execution of the lease nor was she named as a party therein. The defendant took possession of the leased premises. On July 1, 1973, the plaintiff's husband died. There was further evidence that the defendant failed to pay rent for three months during the term of the lease and that the defendant did not give the plaintiff notice of termination of the tenancy.

The lease provided for a term of one year at an annual rental of $2,100 in equal monthly installments. It also required the Lessee ". . . to quit and deliver up the premises to the Lessor or his attorney, peaceably and quietly at the end of the term, in as good order and condition, reasonable use and wearing thereof, fire and other unavoidable casualties excepted, as the same now are, or may be put into by the said Lessor, and to pay the rent as above stated, during the term, and also the rent as above stated, for such further time as the Lessee may hold the same, and not make or suffer any waste thereof. . ."

At the close of the evidence, the plaintiff filed fourteen requests for rulings and now claims to be aggrieved by rulings on the following:

> "7. The defendant owes the plaintiff an amount equal to three months rent at $175.00 per month. *Denied. Plaintiff lacks standing to bring this action in her own right.*
>
> 8. The defendant owes the plaintiff an additional amount of $109.06 for damage to the said apartment. *Denied. See No. 7 for reason.*
>
> 9. The defendant has waived her right to a Motion to Dismiss by pleading to the merits of the plaintiff's declaration. *Denied. I rule that the question of standing to bring the action is properly before the Court.*

11. The defendant is liable for rent to the surviving owner as a tenant by the entirety although that owner had not signed the lease under which the tenancy began. *Denied.*

12. Under a tenancy by the entirety the surviving wife has a right to bring an action to recover rent in her own name. *Denied.*

14. If a tenancy at will was formed, the defendant was required to give notice to quit in order to terminate the tenancy. *Denied. Is immaterial, since I find no tenancy at will was created."*

The following findings of facts were made by the trial justice:

"The plaintiff and one Joseph Seaman, now deceased were the owners of certain premises known as 361A Commercial Street, Provincetown, Massachusetts in March of 1973. The property was owned by Joseph Seaman and Carrie Seaman as tenants by the entirety. On March 11, 1973, Joseph Seaman and the defendant and another entered into a written indenture for the premises in question. Carrie Seaman was not a party to the lease. Upon the death of Joseph Seaman, Carrie Seaman became sole owner of the premises.

"March 11, 1973 was a Sunday. However, there appears to have been ratification of this contract by conduct on various secular days. This conduct included such matters as possession of the premises, and tender and acceptance of monthly rent payments.

"The defendant, Eileen Silver, failed to pay all of the rent stipulated.

"The crucial issue in this case is whether Carrie Seaman, as the surviving tenant by the entirety only, has standing to bring this action in her own right, where she was not a signatory to the lease. I rule that she does not have standing."

We believe that there was error and that the plaintiff as surviving tenant by the entirety has standing to bring this action in her own right despite the fact that she did not execute the lease.

The nature of a tenancy by the entirety has been exhaustively reviewed by our decisions. In *Bernatavicius v. Bernatavicius,* 259 Mass. 486 (1927), Chief Justice Rugg defined a tenancy by the entirety in part as follows at page 487:

> "It is founded on the common law doctrine of the unity of husband and wife as constituting in law but one person . . . Alienation by either the husband or wife will not defeat the right of the survivor to the entire estate on the death of the other . . . and the survivor becomes seised as sole owner of the whole estate regardless of anything the other may have done. The tenancy by the entirety is essentially a joint tenancy modified by the common law theory of the unity of husband and wife . . . (cases cited)."

It has been held that a joint tenant who had not signed a lease has standing to maintain an action for rent. In *Codman v. Hall,* 9 Allen 335 (1864), the surviving joint owners of certain premises brought an action for rent and taxes under an indenture of lease. The defendant insisted that the action could not be maintained because the plaintiff, Codman, had not signed the lease. In finding for the plaintiffs, the court said at page 338:

> ". . . by the death of one of those joint owners, during the term the cause of action for rent or for use and occupation, survived to the other two.

> "We incline to the opinion that these survivors might, on a declaration rightly framed, maintain an action against the defendant on his covenant contained in that instrument, although it was not executed by Charles R. Codman, one

of the joint owners of the premises. For it is an ancient doctrine of the law, that if one party executes his part of an indenture, it shall be his deed, though the other does not execute his part."

The fact that the lease in question was executed by the husband alone did not render it void. Nor could the wife defeat the lease during her husband's lifetime. "By the great weight of authority, he (the husband) has the right to make a lease of an estate conveyed to him and his wife, which will be good against the wife during coverture and will fail only in the event of his wife surviving him . . ." *Pray v. Stebbins,* 141 Mass. 219, 224 (1886); *Peter v. Sacker,* 271 Mass. 383 (1930). However, we maintain it does not necessarily follow that upon the death of the husband, the surviving wife cannot maintain an action in her own right against the tenants on the covenants in the lease to pay rent and for damage and waste to the leased premises.

*Jaques v. Gould,* 4 Cush. 384 (1849) was an action for rent reserved on a lease of real estate for the term of three years. The lessor died before expiration of the term and the heirs commenced this action against the lessee. The issue was whether the lease terminated on the death of the lessor, or continued, the rent passing to the heirs. The lease in that case contained a clause similar to the one under consideration here. At pages 386-387 the court said:

"The clause in the lease on which the question depends is as follows: 'To hold the same (premises) for the term of three years from the first day of December, 1845, yielding and paying therefor the rent of $3000 per annum. And the said lessees do promise to pay the said rent in quarter yearly payments of $750, on the first day of March, June, September and December in each year; the first payment to be made on or before the first day of March, 1846, and to quit and

deliver up the premises to the lessor or his attorney, peaceably and quietly at the end of the term.'

"Counsel for the plaintiffs contend that this clause in the lease is to be construed according to the rule of construction laid down by Lord Coke, (Co. Lit. 47): 'If the lessor', it is said, 'reserve the rent to himself, it shall determine by his death, if he die within the term; but if he reserves the rent generally, without showing to whom it shall go, it shall go to his heirs.' The same rule of construction is laid down in Plow. 171, where it is said, 'If rent be reserved generally without saying to whom, the law will make the distribution.' So in *Whitlock's Case*, 8 Co. 69, 71, it was agreed, that the most clear and sure way to secure rent was, to reserve rent during the term, and leave the law to make the distribution. And this distinction, as to the reservation of rent, is admitted in many other cases. *Sacheverell v. Froggatt*, 2 Saund. 367; *Cother v. Merrick*, Hard. 89; *Sury v. Brown*, Latch, 99, 101.

"This rule of construction is decisive in the present case. The rent, by terms of the lease, is reserved generally, and is not made payable to any particular person; and it is expressly agreed to be paid quarterly yearly during the whole term of three years, which clearly shows that it was not the intention of the parties, that the lease should terminate on the death of the lessor; and so it appears also from the facts agreed; for the lessees continued to occupy the demised premises after the death of the lessor, and have paid a part of the rent which accrued after that time. Nor does the lessee's agreement to deliver up the premises to the lessor or his attorney, peaceably and quietly, at the end of the term, indicate any different intention; the end of the term in that clause of the agreement must have been under-

stood to refer to the end of the three years; otherwise it would be inconsistent with the other part of the agreement immediately preceding it."

Further, at page 388 the court said:

"There is another ground upon which the plaintiffs would be entitled to the rent in arrear, although the term did terminate on the death of the lessor. By a subsequent clause in the lease, the defendants agreed to pay the rent as above stated, and for such further time as they might hold the same. If, then, the defendants continued to hold over after the death of the lessor, as must be inferred from the facts agreed, although it is not expressly so stated, it is immaterial whether the term terminated at the end of three years, or on the death of the lessor . . ."

See also Hall, Landlord and Tenant 8162 at 168 (4th ed. 1949); Schwartz, Lease Drafting in Massachusetts §6.1, at 155 (1961); Crocker's Notes on Common Forms, §795 at 391-392 (7th ed. 1955).

The report indicates that the tenant occupied the premises for a period subsequent to the death of the plaintiff's husband. It also appears that the plaintiff received rent from the tenant after her husband's death on July 1, 1973, inasmuch as she seeks to recover rent for a three month period on a lease, the term of which had seven months to run.[1] It is apparent from the foregoing that the plaintiff assented to the tenancy and by this action seeks to ratify it. See *Gross v. Cohen,* 236 Mass. 468 (1920).

---

[1] The declaration was among the pleadings annexed to the report and incorporated therein by reference. It alleged that the tenant vacated the premises sometime in July 1973, and was credited with $175.00 on account of "judgment obtained for August's rent", $175.00 "for last month's rent" and $350.00 "apartment rented: January 15, 1974."

If the surviving spouse, on the facts elicited here, lacks standing to maintain an action for rent, we are at a loss in whose name such an action could be brought. While she is in a somewhat analagous situation to the heirs in *Jaques v. Gould*, 4 Cush. 384, the heirs of a deceased spouse inherit no part of the property held as a tenant by the entirety. *Bernatavicius v. Bernatavicius*, 259 Mass. 486. Nor can the personal representative of the deceased spouse, be he administrator or executor, claim such property or maintain an action for rents accruing after his death. *Codman v. American Piano Co.*, 229 Mass. 285, 289 (1918).

We conclude that the plaintiff has standing to bring this action in her own right.

Inasmuch as we must vacate the finding for the defendant and order a new trial we shall not treat with the denial of request for ruling No. 9, which deals with the question whether the trial court can raise *sua sponte* the issue of the plaintiff's capacity to maintain this action, where jurisdiction is not in issue.

There being prejudicial error, the finding for the defendant is vacated and the case is remanded to the trial court for a new trial.